UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEBORAH A. ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:03CV1608 CDP |
| ) | |
| CITY OF ST. PETERS, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM AND ORDER**

This dispute arises out of the termination of Deborah Robinson from her position as lead sorter at the City of St. Peters' recycling facility. Robinson contends that she was wrongfully discharged several months after sustaining a shoulder injury on the job. She brings claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010, et seq., the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq., and the Missouri Workers' Compensation Law, Mo. Rev. Stat. § 287.010, et seq. The City now moves for summary judgment and claims that Robinson has failed to establish a prima facie case under any of these statutes. After careful consideration of each of these claims, I will grant the City's motion on the ADA and MHRA claims, and I will deny the motion as to the FMLA and Missouri Workers' Compensation Law claims.

## Background

Robinson sustained an injury to her left shoulder on September 24, 2001while working as a lead sorter at the City's recycling facility. She visited several doctors to determine how best to treat her injury. She first visited her primary physician, Dr. Theodore Rummel. After performing an MRI of Robinson's shoulder, Dr. Rummel concluded that she may have torn her rotator cuff. Dr. Rummel and Robinson discussed both operative and non-operative forms of treatment. Robinson expressed her interest in operative treatment. Robinson was then referred to Dr. Herbert Haupt, who conducted a one-time, independent medical examination. Dr. Haupt concluded that there was no justification for surgical management, due in part to Robinson's symptom magnification behavior.

Robinson was ultimately referred by the City to Dr. Michael Nogalski, who treated her through November and December of 2001. Dr. Nogalski concluded that Robinson's MRI did not suggest a rotator cuff tear, but nevertheless approved her for light duty at work while she underwent physical therapy and further tests. These tests failed to produce any objective findings that were consistent with Robinson's subjective complaints of pain. Dr. Nogalski concluded that Robinson suffered from moderate to severe carpal tunnel syndrome in her left shoulder, but did not feel that further medical care or surgery would help her condition. On December 27, 2001,

Dr. Nogalski released Robinson from further care and indicated to her employer that she could return to full duty work.

In early January, Robinson met with her supervisors to discuss her transition from light duty back to full duty at the recycling facility. Robinson insisted that her shoulder impairment prevented her from returning to full duty without some sort of accommodation. To support her claim, she visited Dr. Rummel on January 8, 2002. Dr. Rummel restricted her to "desk work" until another MRI and an arthrogram could be performed. Dr. Rummel's recommendation did not sway Robinson's supervisors from effectuating Dr. Nogalski's full duty release. In a meeting held on January 10, 2002, Robinson was instructed to return to full duty the following Monday, January 14, 2002. Robinson alleges that during this meeting one of her supervisors, Ron Darling, told her that "had [she] not hired a lawyer, things would have been different. The City would have been willing to work with [her]."

On January 14, 2002, Robinson reported for full duty work, but had to be driven home by Darling in the middle of the day after complaining of severe pain in her left shoulder. On the drive home, Darling allegedly instructed Robinson not to come to work if her shoulder continued to hurt because he was getting tired of taking her home. For the next three days, January 15, 16 and 17, 2002, Robinson failed to report to work. Each morning she called Darling and told him she would

be absent. Robinson did not provide Darling with any specific excuse or medical documentation to support her absence. On Friday, January 18, 2002, Robinson again failed to report to work, and Darling called to inform her of her termination. According to the City, Robinson was terminated because she violated the City's policy on absenteeism. The relevant policy states that an employee may be discharged for, among other reasons, three consecutive unexcused absences.

Following her termination, Robinson contacted Dr. Rummel in early February to again discuss operative versus non-operative treatment. On February 27, 2002, Dr. Rummel performed rotator cuff and carpal tunnel surgery on Robinson's left shoulder and discovered a partial thickness tear in Robinson's rotator cuff. Dr. Rummel testified that the surgery was not a failure and released Robinson from his care in August, 2002.

In June of 2003, Robinson settled the workers compensation claim that she had filed for her shoulder injury. The settlement stated that Robinson now has a twenty percent loss of the use of her left shoulder as well as a fifteen percent disability of her left wrist. After obtaining right-to-sue letters from both the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights, Robinson filed this action on November 6, 2003.

## SUMMARY JUDGMENT STANDARD

The standards for summary judgment are well-settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## DISCUSSION

### 1. ADA and MHRA

The first two counts of Robinson's Amended Complaint allege that she was terminated because of her alleged disability in violation of the ADA and the MHRA. The City claims that it is entitled to summary judgment because Robinson is not

5

disabled as a matter of law. Because Robinson has failed to present evidence to create a genuine issue of material fact as to whether she is disabled, I will grant the City's motion on Robinson's ADA and MHRA claims.

The ADA and the MHRA both prohibit employers from discriminating against qualified disabled individuals on account of their disability. 42 U.S.C. § 12112(a); Mo. Rev. Stat. § 213.055. As a threshold matter, Robinson must show that she is disabled within the meaning of the statutes. See Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995); Cook v. Atoma Int'l of America, Inc., 930 S.W.2d 43, 46 (Mo. App. E.D. 1996).[1]

The ADA defines disability to include "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Major life activities include hearing, speaking, breathing, learning, and working, as well as sitting, standing, lifting and reaching." Cooper v. Olin Corp., Winchester Div., 246 F.3d 1083, 1088 (8th Cir. 2001) (internal citation omitted). "Substantially limits" means unable to perform a major life activity that the average person in the general population can perform, or

---

[1] Robinson's claims under the ADA and MHRA claims are governed by the same standards. Young v. Warner-Jenkinson Co., Inc., 152 F.3d 1018, 1021 n.4 (8th Cir. 1998).

significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to an average person in the general population.  29 C.F.R. § 1630.2(j)(1)(i)-(ii).  The following factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact.  Id. § 1630.2(j)(2)(i)-(ii).

Robinson contends that she is disabled under the ADA because her partial thickness rotator cuff tear substantially limits her in the major life activities of working, lifting, and reaching.  To be substantially limited in the life activity of working, a plaintiff must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training."  29 C.F.R. § 1630.2(j)(3)(1).  The following factors should be considered when making this determination: (1) the geographical area to which plaintiff has reasonable access, (2) the number and the type of jobs from which the plaintiff is disqualified, and (3) the plaintiff's job training, experience, and expectations.  Helfter v. United Parcel Service, Inc., 115 F.3d 613, 617 (8th Cir. 1997); 29 C.F.R. § 1630.2(j)(3)(ii).

For several reasons, Robinson's shoulder impairment does not render her disabled from the life activity of working as a matter of law.  First, the lifting and

7

reaching restrictions that Robinson complains of are indistinguishable from similar impairments that the Eighth Circuit has held do not constitute disabilities under the ADA. For example, in Helfter, the plaintiff developed chronic overuse syndrome in his hands, neck, shoulders, carpal tunnel syndrome of his right wrist, and chronic tenosynovitis of his left hand while working as a sorter for United Parcel Service. 115 F.3d at 615. Due to his condition, the plaintiff could not perform highly-repetitive activities with either hand, or lift more than ten pounds frequently or twenty pounds occasionally. Even with this severe restriction, the Eighth Circuit upheld the district court's determination that the plaintiff was not substantially limited in the major life activity of working. The Court of Appeals reasoned that jobs that require a substantial amount of sustained repetitive motion and heavy lifting constitute only a narrow class of jobs. Id. at 617-18.

Helfter is illustrative of a long line of Eighth Circuit cases that have held that general lifting or reaching restrictions fail to constitute a disability within the meaning of the ADA. See Mellon, 239 F.3d at 957 (plaintiff's thirteen percent permanent partial disability in her wrist, which prevented her from lifting more than fifteen pounds with her right arm, did not constitute a disability); Brunko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001) (forty pound lifting restriction is not a disability under the ADA); Snow v. Ridgeview Medical Center, 128 F.3d 1201,

8

1207 (8th Cir. 1997) (25-pound restriction does not limit ability to perform major life activity); Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir. 1996) (same).

In this case, Robinson essentially has the same restrictions in her left arm that the plaintiff in Helfter had in both arms.  According to Robinson, she suffers from arthritis and carpal tunnel syndrome in her left shoulder.  This condition restricts the amount and frequency of lifting and reaching that she can perform in the workplace. In several of the jobs she has held since she was discharged by the City, she claims to have had difficulty carrying loaded trays of food, pushing large food carts, lifting heavy boxes, and applying the brake on a school bus.  Even when viewing these restrictions in a light most favorable to Robinson, however, she has failed to present sufficient evidence to demonstrate that her condition constitutes a more substantial limitation on the life activity of working as compared to the facts of Helfter and other Eighth Circuit precedent.

Second, Robinson has failed to present any evidence concerning her vocational training or the relevant job market from which a fact-finder could conclude that her impairment precludes her from a significant percentage of employment opportunities.  Cf. Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 948 (8th Cir. 1999) (plaintiff successfully created a triable issue of fact as to

9

whether she was substantially limited in her ability to work by offering the testimony of an occupational specialist who concluded that there was a 91 percent reduction in the plaintiff's employability on account of her disability compared with non-impaired individuals that fit her same vocational profile). Without this evidence, there is no way for a fact-finder to apply the factors provided in the ADA regulations. See Bolton v. Scrivner, Inc., 36 F.3d 939, 944 (10th Cir. 1994) (plaintiff's failure to provide evidence of his "vocational training, geographical area to which he has access, or the number of types of jobs demanding similar training from which [he] would also be disqualified" defeated his attempt to show that he was substantially limited in the life activity of working).

Finally, the evidence that Robinson did provide demonstrates that she has been readily able to secure a wide variety of jobs since her termination from the City. Compare Gutridge v. Clure, 153 F.3d 898, 901 (8th Cir. 1998) (plaintiff failed to present evidence he was substantially limited in the major life activity of working in part because he had secured other employment), with Fjellestad, 188 F.3d at 949 (plaintiff's inability to secure employment was significant factor in Court's holding that there was a triable issue of fact as to whether plaintiff was substantially limited in her ability to work). Robinson's current job, which she has held for over a year, requires her to cook, clean, and bathe disabled individuals. With the exception of

10

not being able to assist a particularly heavy client, Robinson stated that her shoulder impairment does not affect her ability to perform these tasks. For the foregoing reasons, Robinson has failed to create a material issue of fact as to whether she is substantially limited in the major life activity of working.

Robinson has also failed to demonstrate that she is substantially limited in the major life activities of lifting or reaching outside the employment context. To be substantially limited in the life activities of lifting or reaching, a plaintiff "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Philip v. Ford Motor Company, 328 F.3d 1020, 1025-26 (8th Cir. 2003) (quoting Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002)).

Robinson claims that her inability to reach for drinking glasses from high shelves or lift a gallon of milk out of the refrigerator with her left hand constitute severe restrictions on important daily activities. I disagree. Retrieving items from the refrigerator or a high cupboard are certainly important tasks, but Robinson's injured left shoulder does not prevent or severely restrict her from accomplishing these tasks. In fact, Robinson admits that she has learned to compensate for her injury and perform these same tasks with her right hand. Without more, Robinson has failed to present sufficient evidence to show that she is substantially limited in

11

the major life activities of lifting or reaching outside the employment context. Because Robinson's shoulder impairment does not render her disabled in a major life activity as a matter of law, I will grant the City's motion for summary judgment on Robinson's ADA and MHRA claims.

## 2. FMLA

Robinson's third count alleges that the City wrongfully terminated her in violation of the FMLA. Robinson claims that she was lawfully entitled to a leave of absence from work to rest and rehabilitate her injured shoulder. She alleges that when she requested leave from her supervisors, her request was denied and she was terminated instead. The City argues that Robinson cannot demonstrate that her shoulder injury qualifies her for leave under FMLA as a matter of law.

Under the FMLA, employees may take up to twelve weeks of unpaid leave during any twelve-month period for various reasons, including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" includes an injury that involves "a period of incapacity of more than three consecutive days together with continuing subsequent treatment by a health care provider." Frazier v. Iowa Beef Processors, Inc., 200 F.3d 1190, 1195 (8th Cir. 2000); Thorson v. Gemini, Inc., 205 F.3d 370, 377 (8th Cir. 2000); 29 C.F.R. §

825.114(a)(2). The FMLA regulations define "incapacity" to include the "inability to work, attend school, or perform other regular daily activities...." 29 C.F.R. § 825.114(a)(2)(I).

The City contends that Robinson has failed to show that she had a period of incapacity which required an absence from work. I believe she has presented enough to survive summary judgment on this claim. While Dr. Rummel did not excuse her absences, he did report to the City that Robinson had a rotator cuff tear on the left side and that "she should do desk work one-handed only and use a sling." Cf. Frazier, 200 F.3d at 1192 (rotator cuff injury did not result in an inability to perform work under the FMLA where doctor did not provide employee with any work-related restrictions). Despite knowledge of this report, Robinson's supervisors ordered her back to full duty as a lead sorter. As the lead sorter job description indicates, the repetitive manual labor required of the position is completely inconsistent with the job restrictions Dr. Rummel had approved. Robinson's efforts to obtain a reasonable accommodation or leave to rehabilitate her injured shoulder were rejected by the City. Additionally, according to plaintiff, Ron Darling told her that if she could not perform the duties of lead sorter, she should not report to work.

Under these circumstances, a reasonable juror could conclude that

13

Robinson's injury prevented her from going to work and performing the full duties that the City demanded of her for the three days immediately preceding her termination. Although no doctor had stated that she could not work at all, defendant's insistence that she must work full duty conflicts with Dr. Rummel's "desk work" limitation. Because Robinson's allegations have created a genuine issue of material fact concerning whether Robinson suffered from a serious medical condition, I will deny summary judgment on the FMLA claim.

### 3. Missouri Workers' Compensation Law

In her fourth and final claim, Robinson alleges that the City terminated her in retaliation for filing a workers' compensation claim against the City. Robinson maintains that the real reason for her termination was not her violation of the City's absenteeism policy, but instead was her act of hiring a lawyer to pursue a workers' compensation claim.

Mo. Rev. Stat. § 287.780 states that "[n]o employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer." Under Missouri law, the plaintiff must prove the following elements to establish a retaliatory discharge claim under the Workers' Compensation Law: (1) plaintiff was an employee of the

14

defendant before injury; (2) plaintiff exercised a right granted by the Act; (3) defendant discharged employee; and (4) an exclusive causal relationship exists between plaintiff's actions and defendant's actions. St. Lawrence v. Trans World Airlines, Inc., 8 S.W.3d 14, 149 (Mo. Ct. App. E.D. 1999).

The City argues that Robinson has failed to present sufficient evidence to support the fourth element of this claim. Specifically, the City contends that Robinson's three consecutive unexcused absences constituted a valid, non-pretextual justification for her discharge. Robinson counters with the statement allegedly made to her by her supervisor, Ron Darling, who said that "had [Robinson] not gotten an attorney, things would have been better with [her]. The City would have worked with [her]."

After reviewing the record in this case as a whole in the light most favorable to Robinson, I find that summary judgment is improper on this claim. Robinson's allegations have created a genuine factual dispute over whether Robinson's termination was an act of retaliation for her workers' compensation claim. Resolution of this dispute depends on credibility determinations that cannot be made at this stage of the proceedings. See Kummer v. Royal Gate Dodge, Inc., 983 S.W.2d 568, 572 (Mo. Ct. App. E.D. 1998) (conflicting testimony from an employer and an employee regarding the real reason for the employee's discharge precluded

15

summary judgment on the employee's § 287.780 claim); Hansome v. Northwestern Cooperage Co., 679 S.W.2d 273, 275-76 (Mo. 1984) (same).

For several reasons, I find the City's reliance on Lohse v. St. Louis Children's Hosp., Inc., 687 S.W.2d 594 (Mo. Ct. App. E.D. 1985), unavailing in the present case. In Lohse, the Missouri Court of Appeals held that the plaintiff had failed to offer substantial evidence to demonstrate that the employer's alleged reason for discharge – excessive absenteeism – was a pretext for workers' compensation retaliation. Significantly, the plaintiff produced no evidence to suggest that she had exercised, or intended to exercise, her rights under Missouri's workers' compensation law before her termination. Even if she had, the only evidence that the plaintiff offered to establish a causal connection between the exercise of those rights and her discharge was her supervisor's alleged slurs "about gravy train." Id. at 596.

While the City has proffered a similar reason for Robinson's discharge in this case, Robinson has countered with considerably more convincing evidence of pretext than a simple slur "about gravy train." Darling's alleged statement not only acknowledges that Robinson took the first steps necessary to exercise her legal rights, but it also suggests a direct causal link between that action and her treatment on the job. See Wiedower v. ACF Industries, Inc., 763 S.W.2d 333, 334 (Mo. Ct.

16

App. E.D. 1986) (holding that employee made a submissible case sufficient to preclude judgment notwithstanding the verdict where the evidence suggested that prior to the employee's discharge the employee had contacted a lawyer and the employer had warned the employee not to "rock the boat.") overruled on other grounds by Hampton v. Big Boy Steel Erection, 121 S.W.3d 220 (Mo. 2003). While it may be true that St. Peters' basis for Robinson's discharge was valid and nonpretextual, that is ultimately a question for the jury to decide and that question precludes summary judgment on this claim.

Accordingly,

**IT IS HEREBY ORDERED** that the City of St. Peter's motion for summary judgment [# 40] is granted only as to the Deborah Robinson's ADA and MHRA claims (Counts I and II), and is denied as to the FMLA and Missouri Workers' Compensation Law claims (Counts III and IV).

**IT IS FURTHER ORDERED** that this case will be reached for trial on **Wednesday, July 27, 2005, at 9:00 a.m.** (the second Wednesday of the two-week docket on which it was set). All counsel must be present in the courtroom for final pretrial conference at 8:30 a.m. that day. Because the trial will not begin until July 27, 2005, the deadline for the first part of the parties' pretrial submissions is

17

extended to **July 7, 2005**, and the deadline for the second part of those submissions is extended to **July 18, 2005**.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 15th day of June, 2005.